Ivy Ngo (S.B.N. 249860)
**FREEDMAN NORMAND
FRIEDLAND LLP**
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
T: (646) 494-2900
Email: ingo@fnf.law

Edward Normand (*pro hac vice*
forthcoming)
Kyle Roche (*pro hac vice* forthcoming)
Velvel Freedman (*pro hac vice*
forthcoming)
Alex Potter (*pro hac vice* forthcoming)
**FREEDMAN NORMAND
FRIEDLAND LLP**
155 E. 44th Street, Suite 915
New York, NY 10017
(T): (646) 494-2900
Email: tnormand@fnf.law
　　　kroche@fnf.law
　　　vel@fnf.law
　　　apotter@fnf.law

Tibor L. Nagy Jr. (*pro hac vice*
forthcoming)
Tracy O. Appleton (*pro hac vice*
forthcoming)
David Moosmann (*pro hac vice*
forthcoming)
**NAGY WOLFE APPLETON LLP**
31 E 62nd Street, 6th Floor
New York, NY 10065
(T): (646) 494-4900
Email: tibor@nagylaw.com
　　　tracy@nagylaw.com
　　　dmoosmann@nagylaw.com

*Counsel for Brittany Edwards, on behalf of D.B. Barlow*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANY EDWARDS, on behalf of D.B. BARLOW,<br><br>　　　　　Petitioner<br><br>　　v.<br><br>TIKTOK, INC.,<br><br>　　　　　Respondent. | C.A. No. _____<br><br>**VERIFIED PETITION TO COMPEL ARBITRATION** |

Petitioner, Brittany Edwards (as the guardian of D.B. Barlow) brings this verified petition to compel TikTok, Inc. ("TikTok") to adhere to its contractual agreement to arbitrate.

TikTok has been at the center of a global controversy since it was caught spying on, and stealing sensitive personal information from, millions of its users. Many of those users are children. Tens of thousands of those minors' guardians—and individual users of TikTok—are trying to bring individual arbitrations against TikTok pursuant to the arbitration clause that TikTok required its users to assent to as part of its user agreement. But TikTok has refused to arbitrate any of these claims and is forcing Petitioner (and all others like her) to pay all arbitration fees herself, contrary to the applicable arbitration rules. Accordingly, Petitioner must petition this Court for an order compelling arbitration for her.

### <u>NATURE OF PETITION</u>

1.      Petitioner's thirteen-year-old daughter first downloaded TikTok in 2019 when she was just eight years old. TikTok permitted her to do so without her mother's knowledge or consent. When Petitioner discovered that her daughter was using TikTok, she believed the app was a safe and silly platform for her daughter and her friends to share dance videos. That assumption turned out to be false: in reality, TikTok is anything but safe for children.

2.      In a reckless drive to maximize advertising revenue in the United States, TikTok designed and marketed its social media platform to be insidiously addictive

VERIFIED PETITION TO COMPEL ARBITRATION

to our nation's most vulnerable: children. It then deceptively advertised its platform as safe for children, fully aware that children are uniquely susceptible to harms arising out of compulsive use of social media platforms like TikTok. The defective design of its platform has substantially contributed to a mental health crisis affecting millions of children in the United States.

3.     In addition to its gross negligence with respect to minor safety, TikTok surreptitiously has intercepted the private electronic communications of users of TikTok and its integrated website browser (the "In-app Browser") without their consent. TikTok intercepts these private electronic communications in violation of, *inter alia*, the federal Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*, by embedding JavaScript code into the third-party websites accessed using TikTok's in-app browser. The code enables TikTok to track users' conduct and communications with the third-party websites, including mouse movements, clicks, keystrokes (e.g., text being entered into an information field or text box), URLs of web pages visited, and other electronic communications in real time (collectively, "Website Communications").

4.     As this conduct came to light, Petitioner decided to hold TikTok accountable for its behavior. Importantly, anyone who signed up for TikTok from February 2019 through July 2023 agreed to and accepted the TikTok Terms of Service (the "Original User Agreement," attached as Exhibit 1 to the Declaration of Kyle W. Roche ("Roche Decl.")).

VERIFIED PETITION TO COMPEL ARBITRATION

5.      The Original User Agreement contains an arbitration clause that governs any dispute "relating in any way to" the "use of TikTok's services and/or products." Roche Decl. Ex. 1 at 29. The arbitration is to be administered by the American Arbitration Association "under its rules including," if the user is "an individual, the AAA's Supplementary Procedures for Consumer-Related Disputes." *Id.* at 31.

6.      In July 2023, as TikTok's legal concerns grew, the company quietly changed its user agreement to remove the arbitration clause and instead imposed a venue provision requiring all U.S. plaintiffs to file their claims in federal or state court in California. *Id*. Ex. 2 at 13. Unlike the broad arbitration clause in the Original User Agreement—which applies to any dispute relating in any way to the "use of TikTok's services and/or products"—the venue provision is narrower, applying only to disputes "arising out of or relating to **these Terms**." *Id.* (emphasis added). The Amended User Agreement also purports to unilaterally impose a one-year statute of limitations for all claims brought under the agreement.

7.      The straightforward reading of these two agreements is that the Original User Agreement governs all claims arising prior to the issuance of the Amended User Agreement, and the Amended User Agreement, to the extent it is applicable, governs only claims arising thereafter. Consistent with this reading, and TikTok's then-firm commitment to arbitration as its preferred forum for dispute resolution, the Original User Agreement contains a provision stating that "[t]his arbitration provision **will survive any termination of these Terms**." *Id.* Ex. 1 at 30 (emphasis added).

8.    As explained more fully below, however, when Petitioner informed TikTok of her desire to arbitrate claims that accrued under the Original User Agreement, TikTok refused and claimed that all claims against the company were now governed exclusively by the Amended User Agreement. When Petitioner proceeded in arbitration, the AAA agreed with Petitioner and ordered the arbitration to move forward.

9.    TikTok has, however, refused to honor the AAA's directive and its contractual commitments. Instead, it has adopted an inequitable strategy designed to exploit its immense resources to thwart the claims of less monied plaintiffs. In this case, TikTok has refused to pay certain costs of arbitration on the ground that the AAA lacks jurisdiction. Under the rules of the AAA, a failure to remit the required fees will result in termination of the proceedings. By shirking its payment obligations, TikTok intended to force claimants like Petitioner to shoulder substantial expenses on pain of losing access to the parties' chosen forum.

10.    TikTok's attempts to take economic advantage of Petitioner were not limited to its refusal to pay fees. Although TikTok has vigorously protested the AAA's jurisdiction to hear the parties' dispute, it declined to seek any relief from this Court (or any other court) to enjoin the arbitration, thereby forcing Petitioner to expend yet more resources to secure an order directing TikTok to comply with its contractual obligations. TikTok's refusal to honor its contract, participate in arbitration, and pay its share of the filing fees are part of a calculated strategy designed

VERIFIED PETITION TO COMPEL ARBITRATION

to deprive Petitioner of the ability to prosecute her claims and to avail herself of dispute resolution mechanism the parties agreed upon.

11.    This Court should put an end to TikTok's gamesmanship. As Judge Alsup aptly noted in a similar and instructive case: "The irony, in this case, is that the [customers] wish to enforce the very [arbitration] provisions forced on them by seeking . . . individual arbitrations, the remnant of procedural rights left to them. [But TikTok], faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. . . . This hypocrisy will not be blessed." *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067–68 (N.D. Cal. 2020).

12.    Petitioner has filed this Verified Petition to require TikTok to abide by the arbitration agreement it drafted and entered into.

## PARTIES

13.    Petitioner, Brittany Edwards, is the mother and guardian of D. B. Barlow, her thirteen-year-old daughter, and they are both residents of Hartford, Connecticut. Petitioner's daughter has used the TikTok app since 2019.

14.    Respondent, TikTok, Inc., is a for-profit entity, incorporated in the State of California, which operates a social media application and platform known as "TikTok." TikTok Inc. is headquartered at 5800 Bristol Pkwy, Culver City, CA, 90230-6696.

VERIFIED PETITION TO COMPEL ARBITRATION

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over this action pursuant to 9 U.S.C. § 4 and 28 U.S.C. §§ 1331 and 1367 because the underlying controversy involves claims arising under federal law, including, *inter alia*, claims arising under federal Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*

16.    This Court has general personal jurisdiction over Defendant TikTok because it is both incorporated and headquartered in the state of California.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because TikTok resides in this judicial district.

## FACTUAL BACKGROUND

### A.    The Original User Agreement

18.    Since its 2018 U.S. launch, TikTok has become the most downloaded and popular apps in the United States. In March 2023, TikTok boasted "150 million American" users. On average, American children use the app nearly two hours per day. Twenty-five percent of 13 to 17-year-old kids report using TikTok "almost constantly" and over a third admit that the time they spend on social media is "too much." And polling has shown almost half of Gen Z wish that TikTok was never invented.

19.    TikTok has generated eye-popping revenue: nearly $10 billion in 2022, and an estimated $13.5 billion in 2023. This rapid rise is not an accident; it is the result of TikTok's calculated efforts to induce young people to compulsively use its product.

VERIFIED PETITION TO COMPEL ARBITRATION

It has surpassed other social media apps in terms of participation, content, and types of interaction.

20.    Petitioner's daughter—like millions of other children and young adults—first downloaded TikTok in 2019. She was only eight years old at the time. And like all those who created accounts with TikTok prior to July 2023, she used the TikTok app subject to the terms of the Original User Agreement.

21.    The Original User Agreement contains a broad arbitration clause that governs any dispute "relating in any way to your use of TikTok's services and/or products." Roche Decl. Ex. 1 at 29. The arbitration is to be administered by the American Arbitration Association "under its rules including, if you are an individual, the AAA's Supplemental Procedures for Consumer-Related Disputes." *Id.* at 31.

22.    The Original User Agreement also contains a provision stating: "This arbitration provision **will survive any termination of these Terms**." *Id.* at 30 (emphasis added).

**B.    As TikTok Faces Surging Legal Scrutiny, It Quietly Changes its Terms of Service**

23.    Beginning in 2023, numerous experts and public officials began sounding the alarm on both the dangers associated with adolescent use of TikTok and privacy concerns related to the way TikTok records and uses its consumers' behaviors.

VERIFIED PETITION TO COMPEL ARBITRATION

24.    Now we know—as recognized by 46 state attorneys general, numerous public health experts, and national reporting—that TikTok's conduct has fueled an ongoing mental health crisis in many American users, especially children and teens. Drawing inspiration from techniques used by the gambling and tobacco industries, TikTok deliberately embedded design features in its platform to create a product that drives compulsive use.

25.    Since these revelations, TikTok has faced an onslaught of criticism and legal action from Congress, regulators, and private individuals.

26.    As reported by the *New York Times*, TikTok's response to this mounting criticism was to surreptitiously change its terms of service to alter the procedures for asserting claims against the company. *See* S. Maheshwari, *TikTok Quietly Changes User Terms Amid Growing Legal Scrutiny*, NEW YORK TIMES, https://www.nytimes.com/2023/12/14/business/media/tiktok-changes-user-terms.html (Dec. 14, 2023). The dispute resolution provisions of the Amended User Agreement differ from those of the Original User Agreement in at least three ways.

27.    *First*, the Amended User Agreement provides that all claims "arising out of or relating to these Terms [*i.e.*, the 2023 Amended User Agreement terms] shall also be resolved exclusively in the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles." Roche Decl. Ex. 2 at 13. Disputes arising prior to mid-2023 under the Original User Agreement must proceed in arbitration.

28.    *Second*, the Amended User Agreement contains a choice of law provision under which any dispute "arising out of or relating to the Terms will be governed by the laws of the State of California." *Id*. The Original User Agreement contained no choice of law provision.

29.    *Third*, the Amended User Agreement provides for a contractually modified limitations period requiring all claims to be brought within one year from the date the cause of action accrues. The limitations period provision states:

> YOU AND TIKTOK AGREE THAT YOU MUST INITIATE ANY PROCEEDING OR ACTION WITHIN ONE (1) YEAR OF THE DATE OF THE OCCURRENCE OF THE EVENT OR FACTS GIVING RISE TO A DISPUTE THAT IS ARISING OUT OF OR RELATED TO THESE TERMS.    OTHERWISE, YOU FOREVER WAIVE THE RIGHT TO PURSUE ANY CLAIM OR CAUSE OF ACTION, OF ANY KIND OR CHARACTER, BASED ON SUCH EVENTS OR FACTS, AND SUCH CLAIM(S) OR CAUSE(S) OF ACTION ARE PERMANENTLY BARRED.

*Id.*

### C.    Petitioner's Daughter Signed Up For TikTok Under the Original User Agreement

30.    In 2019, when D.B. was eight years old, she signed up for TikTok without Edwards's knowledge. D.B. had TikTok for several months before she told her mother about her account. At the time, Edwards thought TikTok was safe and that her friends and peers would use it to share dance videos and music they liked.

31.    She then gave D.B. permission to use TikTok.

32.    Edwards now regrets that decision. Before D.B. began using TikTok, she was a happy child. She enjoyed spending time with family and friends. But she changed dramatically after she began using TikTok. She became depressed and began

spending all of her time in her room alone on TikTok instead of dancing or spending time with her friends and family.

33.    These changes were devastating for Edwards and made her worry for her daughter's health and happiness. In December of 2022, she learned that her daughter made a TikTok post that said she intended to commit suicide. After a friend's daughter sent her mother a screenshot of D.B.'s TikTok post through Snapchat (another social media application), Edwards's friend brought the post to Edwards's attention. A true and correct copy of the December 21, 2022 text exchange in which the post was brought to Edwards' attention is attached as Exhibit A. At that point, Edwards demanded that her daughter delete the TikTok app and made clear she no longer had her mother's permission to use it. Edwards hoped that was the end of it.

34.    It was not, and over the past two years, she's become even more concerned about her daughter's TikTok use. For example, she recently learned that her daughter has been exposed to videos about vaping on TikTok since 2020. At first, Edwards didn't realize it, but she later saw a video of her daughter asking where her "jewel" was. She found out last year that D.B. was actually talking about Juul, the vape pen.

35.    Edwards has tried to keep her daughter away from TikTok. But doing so is almost impossible because she has become addicted to it. She is still depressed, and she still suffers from thoughts of self-harm. Edwards has sought professional help from a therapist. Edwards continues to worry that the harms TikTok has caused, which

D.B. is dealing with at a time she should be having fun and growing up, will have permanent negative effects on her life.

36.     Since she started using TikTok, D.B has created and used multiple accounts. Because Edwards has repeatedly told her daughter to delete her accounts and the TikTok application, she does not have records of all the accounts she has or may have had. But because she has seen some of her daughter's posts and because she has discussed it with her, Edwards is aware that D.B. made several accounts to date, including the following accounts that she created or used between 2019 and 2022:

> • .flippingxdemi, which she used in or around December 2019–May 2021; and

> • Luvhgod., which she began using around June 2021.

37.     Edwards understands that TikTok is asserting that her daughter agreed to the Amended User Agreement in or around July 2023.

38.     According to TikTok, D.B. would have received the following pop-up, or one substantively identical to it when she used the TikTok application:

VERIFIED PETITION TO COMPEL ARBITRATION

39.    Edwards does not know whether D.B. ever saw this pop-up (or one substantively similar) in July 2023. But assuming this pop-up was shown to her, she would have been twelve years old at the time, and she would not have clicked to another page – taking her away from TikTok – to review any "updated Terms." And even if she had reviewed them (she didn't), she would not have understood them.

40.    For example, one of the changes TikTok claims D.B. agreed to in 2023 is to limit the time frame in which she can sue TikTok. The relevant words are on the thirteenth page of the Amended User Agreement. *See* Roche Decl. Ex. 2 at 13. Even if D.B. had scrolled that far into a legal document, which she would never do, she would have had no idea what TikTok meant when it said she "must initiate any proceeding or action within (1) year of the date of the occurrence of the event or facts giving rise to a dispute that is arising out of or related to these terms" or she would

"forever waive the right to pursue any claim or cause of action, of any kind or character, based on such events or facts."

41.    Another change that TikTok claims D.B. agreed to is that "any claim, cause of action or dispute, arising out of or relating to these Terms shall also be resolved exclusively in the U.S. District Court for the Central District of California or the Superior Court of the State of California County of Los Angeles." D.B. would not have understood the meaning of any of those words.

42.    The Amended User Agreement says that, "[i]f you are under age 18, you may only use" TikTok with the consent of your parent or legal guardian. Roche Decl. Ex. 2 at 2 The Amended User Agreement also says, "Please be sure your parent or legal guardian has reviewed and discussed these Terms with you." *Id.* D.B. was under the age of 18 at the time TikTok claims she would have received a pop-up or otherwise agreed to the 2023 Agreement, and neither Edwards (nor any other legal guardian of D.B.) ever consented to or even knew about the Amended User Agreement with respect to D.B.

43.    Because Edwards never saw the Amended User Agreement with respect to D.B.'s use of TikTok, she did not understand at the time what it said or what it meant. At the time the Amended User Agreement was written by TikTok, the TikTok app had ruined D.B.'s mental health and driven her to the point that she was contemplating suicide. Edwards would never have agreed that she could continue to use the application had she known.

44.     Edwards also would have never agreed on behalf of D.B. to the specific terms that TikTok says D.B. agreed to. For example, Edwards would never have agreed on behalf of D.B. that she would have to put her daughter's and family's private business on the public record by filing a lawsuit in court to hold TikTok accountable. Had she known that she would have to sue TikTok in court to do so when she had the option of keeping their private lives private through confidential arbitration, she would have never agreed to what TikTok says the Amended User Agreement requires even if she was given an opportunity to read it with respect to D.B.

45.     She also never would have agreed to give up D.B.'s right to sue TikTok for any of the harm it caused her. She would never have agreed to what TikTok says the Amended User Agreement means, which is that, if TikTok harmed her daughter more than a year before it wrote the Amended User Agreement, she could not sue TikTok for the damage they've done.

46.     Edwards does not consent on behalf of D.B., and has never consented on her behalf, to the Amended User Agreement. She does not consent to her daughter continuing to use TikTok.

47.     To the extent the Court determines that the Amended User Agreement governs claims that accrued prior to its existence (it does not by its plain terms), she disaffirms the Amended User Agreement on behalf of her daughter.

**D.    Petitioner Files Her Demand with AAA and TikTok Refuses to Arbitrate**

48.    In December 2023, counsel for Petitioner notified TikTok of their intent to bring arbitration on behalf of TikTok account holders for claims accruing **before** July 2023, *i.e.*, the date TikTok changed its terms of service. Counsel provided notice pursuant to the informal dispute resolution procedures contained in the Original User Agreement. *See* Roche Decl. Ex. 1 at 30–32; Roche Decl. ¶ 6.

49.    Between January and March 2024, counsel for Petitioner and counsel for TikTok discussed the parties' respective positions concerning the substantive claims and the appropriate procedures for dispute resolution. During this correspondence, TikTok took the position that the Amended User Agreement applied to claims that accrued both **before and after** the effective date of that agreement, and accordingly, that the company would not consent to proceeding in the AAA. *Id.* ¶ 6.

50.    On March 29, 2024, Petitioner filed her demand against TikTok in the AAA asserting product liability claims arising under state law and wiretapping claims arising under state and federal law. *Id.* ¶ 7.

51.    On May 6, 2024, TikTok argued to the AAA that it has "no agreement with Claimant (or her minor daughter) to arbitrate disputes with AAA." *Id.* Ex. 3 at 1. TikTok asserted that the Original User Agreement was "**void**" and "**superseded**" by the Amended User Agreement which "replaced arbitration with an exclusive venue provision requiring that all disputes **(regardless of when they arose)**" be brought in

the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles. *Id.* (emphasis added).

52.    TikTok's position is without merit. As an initial matter, the Amended User Agreement's venue provision by its own terms is narrow: it does not state that it applies retroactively, and it makes clear it applies only to disputes "arising out of or relating to **these Terms**"—*i.e.*, the Amended User Agreement terms that came into effect in mid-2023, not before. *Id.* Ex. 2 at 13 (emphasis added). By contrast, the broad arbitration clause in the Original User Agreement applies to any dispute relating in any way to the "use of TikTok's services and/or products," *Id.* Ex. 1 at 29.

53.    Moreover, TikTok's argument that the arbitration clause in the Original User Agreement was superseded is contradicted by the plain language of that agreement, which states: "This arbitration provision **will survive any termination of these Terms.**" *Id.* Ex. 1 at 30.

54.    This commonsense reading avoids the absurd result that TikTok implicitly seeks. If TikTok's argument were true, then each user who assented to the terms of the Amended User Agreement (even if they were minor children) agreed to forever waive and release claims against TikTok that were more than one year old. Such a back-door release is not only unconscionable but is contrary to the plain meaning of the two agreements at issue: the Original User Agreement controls dispute resolution for (at a minimum) claims that accrued before July 2023, and the Amended

User Agreement, to the extent it is enforceable, governs dispute resolution for claims arising under it after its effective date (*i.e.*, sometime after its July 2023).

55.     On June 2, 2024, the AAA agreed with Petitioner, stating: "After careful review of the parties' comments, the AAA has determined the claimant has met the filing Requirements" and that "[a]ny further dispute regarding the arbitrability of this claim should be raised to the arbitrator for a determination once one has been appointed." Roche Decl. Ex. 4 at 1. The AAA then directed that TikTok pay the $625 filing fee by June 17, 2024. *Id.*

56.     Since that ruling, TikTok has refused to pay the filing fee as instructed by the AAA. As a result, and to avoid any procedural prejudice, Petitioner has advanced the filing fees TikTok owes to the AAA. Since the AAA's ruling, TikTok has refused to materially participate in the arbitration. It failed to file an Answer to Petitioner's consumer demand, and has continued to protest the AAA's jurisdiction to hear the case.

57.     On December 17, 2024, the Panel ruled "[i]n view of *Coinbase, Inc. v. Suski*, 602 U.S. ___, 144 S.Ct. 1186 (2024), at this time, the Panel is neither deciding the arbitrability issue nor scheduling further action in the arbitration." *Id.* Ex. 5 at 2.

58.     After this Court dismissed the initial petition in this matter without prejudice, the Panel ruled on April 8, 2025 that the "arbitration will remain in abeyance pending determination by the Court on the individual petition." *Id.* Ex. 6.

59.    TikTok's procedural gamesmanship should not be rewarded. It has effectively stalled Petitioner's right to proceed in arbitration for over a year. The Court should compel TikTok to participate in the AAA arbitration that the parties agreed to under the Original User Agreement.

## COUNT I

### 9 U.S. Code § 4 – Failure to Arbitrate Under Agreement

60.    Petitioner repeats and re-alleges the allegations of Paragraph 1 through 59 as if fully set forth herein.

61.    D.B. entered into a valid agreement with TikTok requiring her to arbitrate all claims arising under that agreement before the AAA.

62.    TikTok breached that agreement because it refused to comply with the AAA's administrative determinations regarding the filing fees it must pay under the agreement—fees the AAA requires before it will empanel arbitrators and begin Petitioner's arbitration.

63.    Until TikTok complies with the AAA's administrative determinations, Petitioner will be prejudiced because she will need to pay TikTok's obligations to the AAA with significant risk that TikTok will not meaningfully participate in those proceedings.

64.    The Federal Arbitration Act, 9 U.S.C. § 4 provides: "A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order

directing that such arbitration **proceed in the manner provided for in such agreement**." (emphasis added).

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court enter an order granting the following relief:

A.    Entering an order, pursuant to 9 U.S.C. § 4, that compels TikTok to arbitrate Petitioner's claims that accrued under the Original User Agreement, including by paying AAA's arbitration fees and costs; and

B.    Such other relief as the Court deems just and proper.

I verify under penalty of perjury under the law of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 19, 2025, at Hartford, Connecticut.

/s/ Brittany Edwards
Brittany Edwards

Dated: May 19, 2025

Respectfully submitted,

*/s/ Ivy Ngo*
Ivy Ngo (S.B.N. 249860)
**FREEDMAN NORMAND FRIEDLAND LLP**
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
T: (646) 494-2900
Email: ingo@fnf.law

Edward Normand (*pro hac vice* forthcoming)
Kyle Roche (*pro hac vice* forthcoming)
Velvel Freedman (*pro hac vice* forthcoming)
Alex Potter (*pro hac vice* forthcoming)
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th Street, Suite 915
New York, NY 10017
(T): (646) 494-2900
Email: tnormand@fnf.law
         kroche@fnf.law
         vel@fnf.law
         apotter@fnf.law

*Counsel for Brittany Edwards, on behalf of D.B. Barlow*

Tibor L. Nagy Jr. (*pro hac vice* forthcoming)
Tracy O. Appleton (*pro hac vice* forthcoming)
David Moosmann (*pro hac vice* forthcoming)
**NAGY WOLFE APPLETON LLP**
31 East 62nd Street, 6th Floor
New York, NY 10065
(T): (646) 494-4900
Email: tibor@nagylaw.com
         tracy@nagylaw.com
         dmoosmann@nagylaw.com

VERIFIED PETITION TO COMPEL ARBITRATION