ANTHONY J WEIBELL (SBN 238850)
AWeibell@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306
Telephone:   (650) 331-2000
Facsimile:   (650) 331-2060

SOPHIA M. MANCALL-BITEL (SBN 337002)
SMancall-Bitel@mayerbrown.com
SARAH A. HSU (SBN 348402)
SHsu@mayerbrown.com
REMY N. MERRITT (SBN 359423)
RMerritt@mayerbrown.com
MAYER BROWN LLP
333 South Grand Avenue, 47th Floor
Los Angeles, California 90071
Telephone:   (213) 229-9500
Facsimile:   (213) 625-0248

Attorneys for Respondent TikTok Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANY EDWARDS,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>TIKTOK INC.,<br><br>　　　　Respondent. | CASE NO.:  5:25-cv-01216-JGB(SPx)<br><br>**RESPONDENT TIKTOK INC.'S RESPONSE TO PETITION TO COMPEL ARBITRATION**<br><br>Date: September 8, 2025<br>Time: 9:00 a.m.<br>Place: Court Room 1<br><br>Judge: Hon. Jesus G. Bernal<br>Filed: May 19, 2025 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................1

BACKGROUND ............................................................................................1

ARGUMENT....................................................................................................4

I. THE COURT CANNOT COMPEL ARBITRATION UNDER AN ARBITRATION AGREEMENT THAT IS NO LONGER BINDING..........4

II. THE PARTIES AGREED TO SEND THIS DISPUTE TO COURT. ...........5

III. THE 2019 AGREEMENT IS NO LONGER ENFORCEABLE. ...................8

   A. The Current Agreement Has an Integration Clause that Supersedes All Prior Agreements, Including the 2019 TOS. ..............8

   B. The Arbitration Clause in the 2019 TOS Did Not "Survive" the Amendment of that Agreement........................................................10

IV. PETITIONER'S ATTEMPTS TO AVOID THE CONTRACT FAIL.........11

   A. The Covenant of Good Faith and Fair Dealing Does Not Apply. ......11

   B. The Current TOS is Not Unconscionable. ..........................................14

   C. Daughter is Bound by the TOS Even if She Did Not Read It. ...........17

   D. Parental Consent Was Not Required for Daughter to Accept the Agreement. ..........................................................................................17

   E. Daughter Cannot Disaffirm the Current TOS and Enforce a Prior Version. ...............................................................................................18

   F. Daughter Has Not Disaffirmed the TikTok TOS Because She Continues to Manifest Assent to It and to Use TikTok. .....................20

V. THERE IS NO UNFAIRNESS IN DENYING THE PETITION.................21

CONCLUSION.................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Abernathy v. DoorDash, Inc.*,
438 F. Supp. 3d 1062 (N.D. Cal. 2020) ......................................................22

*Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*,
645 F.3d 522 (2d Cir. 2011) ..........................................................................6

*Ash v. Axos Bank*,
2024 WL 4195313 (S.D. Cal. Sept. 13, 2024) .............................................13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .....................................................................................13

*Azeveda v. Comcast Cable Commc'ns LLC*,
2019 WL 5102607 (N.D. Cal. Oct. 11, 2019).............................................12

*B.D. v. Blizzard Ent, Inc.*,
76 Cal. App. 5th 931 (2022).........................................................................17

*C.M.D. ex rel. De Young v. Facebook, Inc.*,
621 F. App'x 488 (9th Cir. 2015)...........................................................18, 20

*Cape Flattery Ltd. v. Titan Maritime, LLC*,
647 F. 3d 914 (9th Cir. 2011).........................................................................7

*Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
2 Cal. 4th 342 (1992)....................................................................................12

*Casa Herrera, Inc. v. Beydoun*,
32 Cal. 4th 336 (2004)....................................................................................9

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015)........................................................................13

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) .......................................................................................5

*Discover Bank v. Super. Ct.*,
36 Cal. 4th 148 (2005)............................................................................13, 21

*Dixon v. Intercontinental Cap. Grp., Inc.*,
2023 U.S. Dist. LEXIS 109016 (C.D. Cal. June 23, 2023) .........................15

*Doe v. Coll. Bd.*,
440 F. Supp. 3d 349 (S.D.N.Y. 2020).........................................................18

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) ......................................................18

*Doffing v. Meta Platforms, Inc.*,
2022 WL 3357698 (D. Or. July 20, 2022) ..................................................16

*E.K.D. ex rel. Dawes v. Facebook, Inc.*,
  885 F. Supp. 2d 894 (S.D. Ill. 2012) ..............................................................18

*Franco v. Greystone Ridge Condo.*,
  39 Cal. App. 5th 221 (2019).................................................................... 6, 7

*George v. eBay, Inc.*,
  71 Cal. App. 5th 620 (2021)........................................................................11

*Goldman, Sachs & Co. v. City of Reno*,
  747 F.3d 733 (9th Cir. 2014).........................................................................5

*Gutierrez v. Anning-Johnson Co.*,
  2023 WL 3852675 (C.D. Cal. June 6, 2023) .............................................12

*Heckman v. Live Nation Ent, Inc.*,
  686 F. Supp. 3d 939 (C.D. Cal. 2023)........................................................16

*Heinz v. TikTok Inc.*,
  2024 WL 5418632 (Cal. Super. Ct. Oct. 2, 2024) .................................... 6, 7

*Holland v. Universal Underwriters Ins. Co.*,
  270 Cal. App. 2d 417 (1969)...........................................................18, 19, 20

*I.B. ex rel. Fife v. Facebook, Inc.*,
  2013 WL 6734239 (N.D. Cal. Dec. 20, 2013) .............................................18

*Jarboe v. Hanlees Auto Grp.*,
  53 Cal. App. 5th 539 (2020)..................................................................... 8, 9

*John Wiley & Sons, Inc. v. Livingston*,
  376 U.S. 543 (1964) ................................................................................. 4, 5

*Keebaugh v. Warner Bros. Ent. Inc.*,
  100 F.4th 1005 (9th Cir. 2024)....................................................................14

*Kinney v. YouTube, LLC*,
  2018 WL 5961898 (Cal. Ct. App. Nov. 14, 2018).......................................15

*Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*,
  589 F.3d 1027 (9th Cir. 2009)......................................................................16

*Lyons v. NBCUniversal Media, LLC*,
  2019 WL 6703396 (C.D. Cal. Sept. 27, 2019).............................................16

*Moreno v. Sanchez*,
  106 Cal. App. 4th 1415 (2003).....................................................................15

*Pambakian v. Blatt*,
  859 F. App'x 808 (9th Cir. 2021)............................................................... 6, 7

*Patrick v. Running Warehouse, LLC*,
  93 F.4th 468 (9th Cir. 2024).........................................................................17

*R.A. v. Epic Games, Inc.*,
  2019 WL 6792801 (C.D. Cal. July 30, 2019) .......................................18, 20

*Ramirez v. Charter Commc'ns, Inc.*,
   16 Cal. 5th 478 (2024)..................................................................................15

*Rejuso v. Brookdale Senior Living Cmtys., Inc.*,
   2018 WL 6173384 (C.D. Cal. Nov. 13, 2018)..............................................19

*Salgado v. Carrows Rests., Inc.*,
   33 Cal. App. 5th 356 (2019).............................................................6, 7, 8, 13

*Scollan v. Gov't Emps. Ins. Co.*,
   222 Cal. App. 2d 181 (1963).........................................................................19

*Suski v. Coinbase, Inc.*,
   55 F.4th 1227 (9th Cir. 2022)..........................................................................5

*Tompkins v. 23andMe, Inc.*,
   840 F.3d 1016 (9th Cir. 2016)........................................................................15

*Trudeau v. Google LLC*,
   349 F. Supp. 3d 869 (N.D. Cal. 2018) ...........................................................12

*V.R. v. Roblox Corp.*,
   2023 WL 8821300 (9th Cir. Dec. 21, 2023) ..................................................17

*Wind Dancer Prod. Grp. v. Walt Disney Pictures*,
   10 Cal. App. 5th 56 (2017).............................................................................15

*Yeh v. Tesla, Inc.*,
   2023 WL 6795414 (N.D. Cal. Oct. 12, 2023).................................................18

**STATUTES**

Cal. Civ. Code § 1698(a) ......................................................................................11

Cal. Civ. Proc. Code § 1856(a).........................................................................9, 10

Cal. Fam. Code § 6700 .........................................................................................17

**OTHER AUTHORITIES**

Zachary David Miller, Kevin Scott Ranlett, & Rachel Ross Friedman,
   *Mass Arbitration Update: The Uncertain Path Ahead*, American
   Bar Association (May 28, 2024) .....................................................................22

## **INTRODUCTION**

Respondent TikTok Inc. ("TTI") respectfully submits this response to the petition to compel arbitration (the "Petition") filed by petitioner Brittany Edwards ("Petitioner") on behalf of her daughter D.B. Barlow ("Daughter"). The Petition should be denied for several reasons:

(1)    Under Supreme Court law, this Court cannot grant the Petition because the parties have no currently-enforceable arbitration agreement.

(2)    Daughter made a *new* contract with TTI each time she created a new account after July 2023 and thereby agreed anew that any claims, regardless of when they arose, must be submitted to this Court and not to arbitration.

(3)    The old arbitration agreement is no longer enforceable because the parties' current contract is an *integrated* contract that supersedes any prior agreements.

(4)    Petitioner's myriad arguments to evade the current, integrated contract are contrary to controlling law. Although Daughter is certainly free to disaffirm all agreements with TTI and cease using the TikTok service, the law does not allow her to enforce the terms she likes and disaffirm the "irksome" parts of the contract.

(5)    There is no unfairness in denying the Petition. Courts have long recognized that the freedom to bring individual and class actions in court is better for consumers than individual arbitration. Unlike cases cited by Petitioner, this is not a case where TTI compelled Petitioner to arbitrate her claims and now seeks to escape that arbitration by running to court. The parties mutually agreed to get rid of their arbitration agreement *prior* to Petitioner ever asserting the present claims.

For all these reasons, the Petition should be denied.

## **BACKGROUND**

The TikTok app is a platform where users can create, share, and view videos after agreeing to the TikTok Terms of Service ("TOS"). Petitioner alleges that users of the TikTok app must agree to the TOS to create a TikTok account, and that

Daughter did so in 2019. Pet. ¶¶ 1, 4. At the time Daughter allegedly created her first of many accounts, the then-operative version of the TOS provided for arbitration of disputes by AAA. ECF No. 1-3 (hereinafter, "2019 TOS"). But Daughter also agreed that TTI could amend the TOS "from time to time," and she agreed to be bound by such amendments if she continued to use the app thereafter. *Id.* § 3 ("Changes to the Terms").

In July 2023, TTI notified TikTok users that the TOS was being updated. Users were first presented with a non-dismissible pop-up notice with a link to the updated user terms (the "July 2023 TOS"), a button titled "Remind me later," and a button titled "I agree" to manifest consent to the July 2023 TOS:

## U.S. Terms of Service Update

We're updating our Terms of Service. You can review and learn more about our updated Terms **here**. If you agree to our updated Terms of Service, please click the "I agree" button below.

| Remind me later | I agree |

Declaration of Khoi Nguyen ("Nguyen Decl.) ¶ 7 & Ex. E.

This pop-up notice *covered the screen* and *blocked* users from using the app until they clicked one of the buttons. Users who clicked the hyperlink were shown the updated TOS with this banner at the top:

*TikTok is updating its Terms of Service for U.S. users regarding how we'll resolve disputes when you use TikTok. Beginning July 31, 2023, to continue using TikTok, users will need to agree to the updated Terms of Service. To learn more, please see Section 12. Dispute Resolution → below. Click here ↗ to view our current Terms of Service.*

*Id.* ¶ 9, Ex. G.

On or after July 31, 2023, any user who asked to be reminded later, or who had not opened the app during the preceding notice period, was given a final notice that the TOS was being updated. These users were presented with a non-dismissible pop-up notice that *covered the screen* and *blocked* users from using the app until they clicked the "I agree" button. The notice included a link to the July 2023 TOS and a button titled "I agree" if they wished to continue using TikTok:

*Id.* ¶ 8 & Ex. F.

The July 2023 TOS expressly replaced the prior versions of the TOS: "These Terms constitute the *whole legal agreement* between you and TikTok and govern your use of the Services and *completely replace any prior agreements* between you and TikTok *in relation to the Services*." *See id.* Ex. G § 11 ("Entire Agreement") (emphasis added).

More importantly, the July 2023 TOS *eliminated arbitration as an option entirely*, requiring that "any" disputes (regardless of when they arose) "be resolved exclusively in the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles." *Id.* § 12.B.

On March 29, 2024—eight months after the arbitration agreement was eliminated—Petitioner filed a demand for arbitration with AAA. Pet. ¶ 50. TTI declined to arbitrate because the parties had no binding arbitration agreement.

On September 24, 2024, Petitioner brought a Class Action Petition to Compel Arbitration on behalf of "thousands of others" seeking to arbitrate with TTI. *Edwards v. TikTok Inc.*, Case No. 5:24-cv-02039, ECF No. 1 (Sept. 24, 2024) ("First Petition"). On March 18, 2025, this Court denied the First Petition for improperly trying to proceed as a class action under Rule 23. *Id.*, ECF No. 50.

In briefing on the First Petition, Petitioner repeatedly stated in her declaration made under penalty of perjury that she "never consented to or even knew about the July 2023 Agreement." *See* First Petition, ECF No. 35-9 ¶¶ 19, 21–25. This was not true; *she did consent*. Petitioner saw the notice of updated terms and clicked "I agree" to accept those terms on July 18, 2023. *Id.*, ECF No. 40-1 ¶ 4, Ex. A; Nguyen Decl. Ex. A; *see also* https://www.tiktok.com/@bellab895 (Petitioner's alleged public TikTok account, showing posts from 2021 to 2024, including as recently as October 22, 2024, demonstrating she clicked "I agree" to the updated TOS).

Although Petitioner failed to identify in the First Petition any TikTok account used by Daughter, Petitioner later identified two such accounts. However, both accounts had been created *after* July 2023 and even *after* Petitioner had filed her demand for arbitration. *See* Nguyen Decl. Ex. A. Petitioner has admitted that Daughter repeatedly created TikTok accounts after July 2023 and that Daughter "continues to use TikTok's platform" to this day. *See* First Petition, ECF No. 35-3 ¶¶ 264, 282; *id.*, ECF No. 35-9 ¶ 20. Daughter has assented to the TOS each time she created one of these accounts. Pet. ¶ 4 ("anyone who signed up for TikTok … agreed to and accepted the TikTok Terms of Service").

## ARGUMENT

### I.  THE COURT CANNOT COMPEL ARBITRATION UNDER AN ARBITRATION AGREEMENT THAT IS NO LONGER BINDING.

A party "cannot be compelled to arbitrate if an arbitration clause does not bind it at all." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964). "[D]isputes are subject to arbitration if, and only if, the parties actually agreed to

arbitrate those disputes." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024). "Consequently, the first question in any arbitration dispute must be: What have these parties agreed to?" *Id.* at 148. Where, as here, the parties allegedly entered into two agreements—an earlier agreement with an arbitration clause and a later agreement without one—"*a court, not an arbitrator*, must decide whether the parties' first agreement was superseded by their second." *Id.* at 152 (emphasis added). This decision must occur "*before* either the delegation provision or the forum selection clause [in those agreements] can be enforced." *Id.* at 145 (emphasis added).

Here, as explained below, TTI "cannot be compelled to arbitrate" any issues (including the question of arbitrability) because the parties have agreed not to submit their disputes to arbitration and because the arbitration clause proffered by Petitioner, which was expressly eliminated during the parties' 2023 modifications to the TOS, "does not bind [TTI] at all." *John Wiley*, 376 U.S. at 547.

## II.  THE PARTIES AGREED TO SEND THIS DISPUTE TO COURT.

The parties' current agreement contains an exclusive venue provision that precludes arbitration of any claims, regardless of when they arose. Nguyen Decl. Ex. G § 12.B ("Exclusive Venue"). Petitioner and Daughter agreed to send all claims to court instead of arbitration *long before* Petitioner filed her arbitration demand by clicking "I agree" to the amended terms in July 2023 or by creating a new account after July 2023. First Petition, ECF No. 35-9 ¶¶ 11–12; Nguyen Decl. ¶¶ 2–9.

Ninth Circuit controlling authority is clear: when parties to an arbitration agreement enter into a subsequent agreement that says nothing about arbitration but says the courts will have "exclusive" jurisdiction to resolve their disputes, the prior arbitration agreement is no longer binding and cannot be enforced. *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1231 (9th Cir. 2022), *aff'd*, *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024). In such a case, "the [later agreement's] forum selection clause supersedes the [earlier agreement's] arbitration clause." *Id.*; *accord Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 744 (9th Cir. 2014) (a venue clause in a

subsequent agreement supersedes any prior arbitration agreement). This is because "parties are free to revoke an earlier agreement to arbitrate by executing a subsequent agreement the terms of which plainly preclude arbitration." *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 525–26 (2d Cir. 2011) (arbitration agreement was not binding where later agreement had an exclusive venue provision).

Both the California courts and the Ninth Circuit have held that this rule applies to claims that arose *prior* to the formation of the new agreement, not just to future disputes, absent *express* language limiting the new agreement to future claims. *Salgado v. Carrows Rests., Inc.*, 33 Cal. App. 5th 356, 361–62 (2019) ("the contention that [a dispute resolution agreement] must pre-date the actions giving rise to the dispute is misplaced"; holding that dispute resolution agreement would apply retroactively to claims filed by plaintiff prior to signing the agreement); *Franco v. Greystone Ridge Condo.*, 39 Cal. App. 5th 221, 229–30 (2019) (phrase "[a]ny and all claims … relating to any aspect of Employee's employment with Employer" applied retroactively because "there is no language containing a limitation or restriction based on the age of covered claims"); *Pambakian v. Blatt*, 859 F. App'x 808, 809 (9th Cir. 2021) (arbitration agreement applied retroactively where the express scope of the agreement is "broad and not temporally limited").

Indeed, another court in this state has already denied a petition to compel arbitration in a similar case against TTI on these grounds. *Heinz v. TikTok Inc.*, 2024 WL 5418632 (Cal. Super. Ct. Oct. 2, 2024). In *Heinz*, the petitioner filed a petition to compel TTI to arbitrate claims that allegedly arose prior to his acceptance of TTI's July 2023 TOS. *Id.* at *1. But the court rejected the petition, holding that "the broad language of the July 2023 Terms of Service … applies retroactively to Petitioner's dispute and eliminates the possibility of seeking arbitration." *Id.* at *3. The court held that under *Salgado*, "the February 2019 Terms of Service do not control this dispute and there is no basis to find the July 2023 Terms of Service cannot apply retroactively." *Id.*

Here, just as in *Heinz*, the exclusive venue provision of the July 2023 TOS eliminates any prior obligation to arbitrate Petitioner's claims because it requires that "any" and all disputes (regardless of when they arose) "be resolved exclusively in the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles." Nguyen Decl. Ex. G § 12.B ("Exclusive Venue"). The reference to "any" disputes captures all disputes, even those that may have arisen prior to the new agreement, and there is no language expressly limiting the venue provision to future disputes only.

Petitioner incorrectly argues otherwise, inaccurately claiming that "[t]he Terms … are defined to mean the 2023 Agreement, and not any predecessor terms." Pet. Mem. at 10; *see also* Pet. ¶ 6. Contrary to Petitioner's incorrect argument, the exclusive venue provision broadly applies to "[a]ny claim, cause of action or dispute, arising out of or relating to these Terms," where the "Terms" are defined to "govern the relationship and serve as an agreement between you and us and set forth the terms and conditions by which you may access and use the Platform and our related websites, services, applications, products and content (collectively, the "Services")." Nguyen Decl. Ex. G §§ 1 ("Your Relationship With Us."), 12 ("Dispute Resolution"). The exclusive venue provision broadly refers to the TOS as a whole, regardless of version, and there is no language limiting the provision to "future" claims only. Moreover, the Ninth Circuit has held that "when parties intend to include a broad [venue] provision, they [use the phrase] 'arising out of or relating to' the agreement." *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F. 3d 914, 922 (9th Cir. 2011). Thus, "any" claims "arising out of or relating to" Daughter's use of TikTok are covered by this venue clause, regardless of when those claims arose.

Petitioner's further argument that the venue clause cannot apply to events that predate the agreement unless it expressly mentions "past" claims (Pet. Mem. at 10) has been squarely rejected by *Salgado*, *Franco*, and *Pambakian*, which reflect controlling and binding authority on this court (unliked the cases cited by Petitioner).

Petitioner cannot distinguish this controlling authority. In *Salgado*, the court held that the reference to "any" claims on the subject, in the absence of any temporally-limiting language, covered past claims and even a preexisting lawsuit: the words "'any claim, dispute, and/or controversy that I may have against the Company … shall be submitted to … arbitration' … unequivocally requires arbitration for 'any claim' [plaintiff] has against [defendant] …. [Plaintiff's previously filed] lawsuit is such a claim." *Salgado*, 33 Cal. App. 5th at 361. The question in this case is even easier to decide than in *Salgado* because there, the plaintiff had already filed her lawsuit before she signed the new agreement. *Id.* at 361–62. By contrast, here, the arbitration demand was not filed until the year *after* the new agreement.

None of the cases Petitioner cites are controlling authority, and all of them predate *Salgado* and the other cases cited above. *See* Pet. Mem. at 10–11 & n.3 (citing cases decided in 2018 and earlier).

Consequently, under controlling law, the "exclusive venue" for Petitioner's claims is in court, not arbitration, and Petitioner cannot compel TTI to arbitrate.

## III. THE 2019 AGREEMENT IS NO LONGER ENFORCEABLE.

Separately, the current TOS has an *integration* clause that expressly supersedes and "completely replace[s]" any prior agreements between the parties. *See* Nguyen Decl. Ex. G § 11 ("Entire Agreement"). Petitioner cannot use the survival clause in the 2019 TOS to overcome the integration clause of the current TOS. Consequently, the 2019 TOS is not binding and cannot be used to compel arbitration.

### A. The Current Agreement Has an Integration Clause that Supersedes All Prior Agreements, Including the 2019 TOS.

Under California law, which governs the parties' current agreement, *see id.* § 12.B ("Exclusive Venue"), "terms contained in an integrated written agreement may not be contradicted by prior or contemporaneous agreements." *Jarboe v. Hanlees Auto Grp.*, 53 Cal. App. 5th 539, 551–552 (2020); *see also* Cal. Civ. Proc. Code §

1856(a) ("Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein *may not be contradicted by evidence of a prior agreement* or of a contemporaneous oral agreement." (emphasis added)). This rule is not merely a rule of evidence, "it determines the enforceable and incontrovertible terms of an integrated written agreement. … By defining the terms of the parties' agreement, the rule is necessarily substantive[.]" *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 345–46 (2004).

Applying this rule to arbitration, an earlier arbitration agreement is nullified by a subsequent integrated agreement that "expressly supersede[s] the prior" agreement. *Jarboe*, 53 Cal. App. 5th at 551–552. In *Jarboe*, the plaintiff entered into a first arbitration agreement upon applying for a job, and subsequently signed a second agreement upon obtaining that job. *Id.* at 544–45. The court held that the second agreement contained an integration clause that completely replaced the prior arbitration agreement, even though the second agreement was much narrower in scope and did not apply to all of the parties who were covered by the first agreement. *Id.* at 551–52. The court concluded that the parties who were not covered by the second agreement could not enforce the first agreement because the first agreement was no longer binding on anyone. *Id.*

Here, as in *Jarboe*, the arbitration agreement in the 2019 TOS cannot be enforced because the July 2023 TOS contains an integration clause that completely replaces all prior agreements: "These Terms constitute the whole legal agreement between you and [TTI] and govern your use of the Services and *completely replace any prior agreements* between you and [TTI] in relation to the Services." *See* Nguyen Decl. Ex. G § 11 ("Entire Agreement") (emphasis added). This is true regardless of when Petitioner's claims accrued.

**B.    The Arbitration Clause in the 2019 TOS Did Not "Survive" the Amendment of that Agreement.**

Petitioner repeatedly—and incorrectly—argues that the arbitration provision in the 2019 TOS survives today because it provides "[t]his arbitration provision will survive any termination of these Terms." *See* Pet. ¶¶ 7, 53; Pet. Mem. at 9–10. But again, Petitioner cannot use evidence of a prior agreement to contradict the terms of a subsequent, integrated agreement because it is forbidden under the law. Cal. Civ. Proc. Code § 1856(a) ("Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein *may not be contradicted by evidence of a prior agreement* or of a contemporaneous oral agreement." (emphasis added)).

Petitioner's argument also fails to recognize the difference between the "termination" of a contract and the "amendment" or "replacement" of a contract. When parties amend or replace a contract with a new, integrated agreement, they are not "terminating" the original contract; they are agreeing to change the terms of the operative agreement between them. Under Cal. Civ. Proc. Code § 1856(a), no provision in an earlier version of a contract can "survive" an amendment unless it appears in the amended, integrated agreement. That is what the words "amend" and "integrated" mean. Here, the parties expressly agreed to change "how we'll resolve disputes" to eliminate arbitration:

> TikTok is updating its Terms of Service for U.S. users regarding how we'll resolve disputes when you use TikTok. Beginning July 31, 2023, to continue using TikTok, users will need to agree to the updated Terms of Service. To learn more, please see Section 12. Dispute Resolution → below. Click here ↗ to view our current Terms of Service.

Nguyen Decl. Ex. G at 1. The arbitration clause could not have survived this amendment without contradicting the parties' express agreement that the new version "completely replace[d]" the prior version and "how we'll resolve disputes."

Parties are always free to agree to amend and modify the contracts between them. *See* Cal. Civ. Code § 1698(a) ("A contract in writing may be modified by a contract in writing."). Here, if Petitioner was a party to the 2019 TOS, she later agreed to modify that agreement to remove arbitration as a requirement when the TOS was updated in July 2023. The original arbitration clause did not "survive" this amendment. Were that not the case, it would be impossible for parties to ever amend or modify an agreement between them that had a survival clause, which is contrary to § 1698(a) and the common law.

## IV.    PETITIONER'S ATTEMPTS TO AVOID THE CONTRACT FAIL.

Petitioner makes several arguments seeking to avoid the express terms of the TOS, but these must be rejected because they contradict basic contract law.

### A.    The Covenant of Good Faith and Fair Dealing Does Not Apply.

Petitioner incorrectly argues that the implied covenant of good faith and fair dealing prevented TTI from updating the TOS to eliminate arbitration.

*First*, as a threshold problem with Petitioner's argument, the implied covenant does not apply to Daughter because when Daughter created new TikTok accounts after July 2023, she assented to the latest version of the TOS independent of any prior agreements. This takes her outside the scope of the implied covenant from the prior version because she is bound by her assent to the new terms completely independent of any changes made to the old terms.

*Second*, the implied covenant did not prohibit TTI from removing the arbitration clause because users had notice of the change, users had the option to decline the effect of the change by discontinuing their use of the service, and the changes applied only to those who manifested assent to the changes by clicking "I agree." Nguyen Decl. ¶¶ 7–8. "[T]he implied covenant cannot be used to vary the express terms of the contract." *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 638 (2021). "[C]onduct can never violate an implied covenant of good faith and fair dealing" if it is "expressly permitted by the [contract] and was clearly within the

parties' reasonable expectations." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 376 (1992).

Accordingly, courts hold that a party with discretion to amend a contract can do so where the other party has notice and a chance to assent to it, or where the change is otherwise within the parties' reasonable expectations. *See, e.g.*, *Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 880–81 (N.D. Cal. 2018) (distinguishing implied covenant cases cited by Petitioner because the other party had notice of the change to the arbitration agreement and an opportunity to opt out of its retroactive effect); *Azeveda v. Comcast Cable Commc'ns LLC*, 2019 WL 5102607, at *6 n.5 (N.D. Cal. Oct. 11, 2019) (same); *Gutierrez v. Anning-Johnson Co.*, 2023 WL 3852675, at *14 (C.D. Cal. June 6, 2023) ("Plaintiff's argument that Defendant unilaterally modified the CBA is unpersuasive.").

Here, any user who agreed to any version of the TikTok TOS also agreed that TTI could "amend these Terms from time to time," and that upon notice that the TOS has been amended, their "continued access or use of the Services after the date of the new Terms constitutes your acceptance of the new Terms." 2019 TOS § 3 ("Changes to the Terms"). If users did not want to be bound by the new terms, all they had to do was "stop accessing or using the Services." *Id.*

But there is more. Petitioner does not dispute that when TTI updated the TOS in July 2023, it placed a banner at the *top* of the TOS specifically telling users that it was changing "how we'll resolve disputes," and giving them a link to jump down to the relevant section of the TOS:

> TikTok is updating its Terms of Service for U.S. users regarding how we'll resolve disputes when you use TikTok. Beginning July 31, 2023, to continue using TikTok, users will need to agree to the updated Terms of Service. To learn more, please see Section 12. Dispute Resolution → below. Click here ↗ to view our current Terms of Service.

Nguyen Decl. ¶ 9, Ex. G at 2. As in *Salgado*, the language used here contains no temporal limitation limiting the disputes covered to those based on future events and, therefore, covers all disputes regardless of when they arose.

And still there is more. Petitioner also does not dispute that TTI notified all users through a non-dismissible pop-up blocking their use of the TikTok app that TTI was updating the TOS and required that all users click "I agree" to the updated TOS to continue using the app. *Id.*; *see also id.* ¶ 7, Ex. E.

These actions by TTI distinguish TTI's changes to the TOS from the contract changes made by the defendants in the cases cited by Petitioner. *See Ash v. Axos Bank*, 2024 WL 4195313, at *4 (S.D. Cal. Sept. 13, 2024) ("here, there is no evidence UFB required Plaintiffs to expressly accept the updates to the Personal Deposit and Online Access Agreements"); *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 962–63 (2015) (defendant imposed an arbitration obligation that covered a "previously filed lawsuit" without any ability to opt out). By contrast, here, users were free to choose to reject the updated terms and walk away.

*Third*, the implied covenant cannot prevent a company from amending the parties' agreement to *eliminate* an obligation to arbitrate. Courts considering the implied covenant and unconscionability have only been concerned with the *imposition* of an agreement to arbitrate on consumers and employees—not the release of the arbitration obligation—because courts have been concerned that such arbitration agreements are nothing more than "one-sided, exculpatory contracts in a contract of adhesion." *Discover Bank v. Super. Ct.*, 36 Cal. 4th 148, 161 (2005)*, overruled on other grounds, AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011). There is nothing unfair or restrictive in dissolving arbitration restrictions.[1]

---

[1] As discussed in Section V, *infra*, the dicta in *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062 (N.D. Cal. 2020), is not to the contrary.

**B.    The Current TOS is Not Unconscionable.**

Petitioner attempts to enforce the arbitration agreement in the 2019 version of the TOS by arguing that the current version is "unconscionable." Pet. Mem. at 14. Petitioner's argument fails because, as she admits, she must show that the current TOS "is *both* procedurally and substantively unconscionable" (*id.*), yet she fails to identify *anything* unconscionable about the removal of an otherwise restrictive arbitration agreement with notice and a chance to opt out.

There is no unconscionability unless the contract "shocks the conscience." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1023 (9th Cir. 2024). Under this standard, contracts can even have unlawful elements and still not be "unconscionable." *Id.* (arbitration agreement was not unconscionable just because it contained a provision that was *unlawful*).

Here, unlike the situation where a restrictive arbitration agreement is forced upon consumers through a contract of adhesion, there is nothing that "shocks the conscience" about the *elimination* of such restrictions. We are aware of no other attempt by a plaintiff to try to use an unconscionability argument to enforce a consumer arbitration agreement against a company that has previously agreed to release consumers from that obligation.

To the extent Petitioner argues that *other* provisions of the current TOS are substantively unconscionable (Pet. Mem. at 16), her argument misses the mark because the TOS has a strong severability clause (as discussed above): "If any court of law, having jurisdiction to decide on this matter, rules that any provision of these Terms is invalid, then that provision will be removed from the Terms without affecting the rest of the Terms, and *the remaining provisions of the Terms will continue to be valid and enforceable*." Nguyen Decl. Ex. G § 11 (Severability) (emphasis added). The California Supreme Court has held that "if the contract contains a severance clause, the court should take it into account as an expression of the parties' intent that an agreement curable by removing defective terms should

otherwise be enforced," rather than refusing to enforce the entire contract. *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 517 (2024). "[C]ourts may liberally sever any unconscionable portion of a contract and enforce the rest when: the illegality is collateral to the contract's main purpose; it is possible to cure the illegality by means of severance; *and* enforcing the balance of the contract would be in the interests of justice." *Id.*; *see also Dixon v. Intercontinental Cap. Grp., Inc.*, 2023 U.S. Dist. LEXIS 109016, at *17–18 (C.D. Cal. June 23, 2023) (severing unconscionable provisions but enforcing the rest of the arbitration agreement).

Thus, Petitioner's repeated complaints about the limitations period and the forum selection clause in the current TOS are irrelevant to her Petition. Those provisions can be struck if unenforceable. And if struck, the TOS would still be "valid and enforceable," would still supersede the prior versions of the TOS, and would still contain *no* arbitration clause.

But Petitioner's substantive conscionability arguments are also wrong. Ninth Circuit law holds that there is nothing unconscionable about a forum selection clause that places venue in the district where the defendant is headquartered, even if it may "require consumers to travel from a faraway city or state for a small potential recovery." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1027–28 (9th Cir. 2016). And with respect to the one-year limitations period, the law allows it: "It is settled that parties may agree, in an arbitration agreement or otherwise, to shorten the limitations period applicable to a claim." *Ramirez*, 16 Cal. 5th at 501. "California courts have afforded contracting parties considerable freedom to modify the length of a statute of limitations." *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003). "California courts routinely have enforced contractual provisions shortening the four-year statute of limitations for breach of a written contract to periods of one year or less." *Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 10 Cal. App. 5th 56, 76 (2017); *accord Kinney v. YouTube, LLC*, 2018 WL 5961898, at *5 (Cal. Ct. App.

Nov. 14, 2018) (one-year limitations period in the YouTube Terms of Service "was not unconscionable").

Petitioner's procedural unconscionability arguments likewise fail. The primary case cited by Petitioner is an out-of-state magistrate report and recommendation that was decided under Oregon law, not California law, and that was never adopted by the District Judge in that case. *See* Pet. Mem. at 14 (citing *Doffing v. Meta Platforms, Inc.*, 2022 WL 3357698 (D. Or. July 20, 2022)). It thus never became an order of the court and is not properly cited as authority. *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) ("A magistrate judge's recommendations … have no binding legal effect on the parties until the district court adopts them."). Regardless, *Doffing* is distinguishable because here, Petitioner seeks to enforce the prior version of the TOS and has no problem with that earlier version of the agreement, even though the procedural issues would be identical to the later versions.

To the extent Petitioner argues that the TOS is procedurally unconscionable because it has "retroactive effect," Petitioner is wrong. Contrary to Petitioner's arguments, there is nothing prejudicial or that deprives users of the opportunity to opt out of changes to the TOS. As explained above, TikTok users had notice of the changes to the TOS and could choose to reject them before they took effect. The cases cited by Petitioner are thus distinguishable because they involved a unilateral modification of terms without the chance to opt out. *See Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939, 953–54 (C.D. Cal. 2023) (defendant amended the terms "without giving any notice to existing customers"); *see Lyons v. NBCUniversal Media, LLC*, 2019 WL 6703396, at *10 (C.D. Cal. Sept. 27, 2019) (plaintiffs had no chance to assent to new terms after unilateral modification).

Petitioner's unconscionability arguments should therefore be rejected.

**C.      Daughter is Bound by the TOS Even if She Did Not Read It.**

Petitioner's *speculation* that Daughter may not have read the TOS is irrelevant. Subject to the right of a minor to disaffirm a contract (discussed below), a minor is bound to a contract to which they manifest assent, even if they do not read it: "If an offeree objectively manifests assent to an agreement, the offeree cannot avoid a specific provision of that agreement on the ground the offeree did not actually read it." *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 943 (2022). "While it may be the case that many users will not bother reading the terms, that is the choice the user makes; the user is still on inquiry notice." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024).

**D.      Parental Consent Was Not Required for Daughter to Accept the Agreement.**

Petitioner incorrectly argues that Daughter could not legally agree to the latest version of the TikTok TOS without Petitioner's consent. Under the law, a minor "may make a contract in the same manner as an adult" without parental consent. Cal. Fam. Code § 6700; *see also V.R. v. Roblox Corp.*, 2023 WL 8821300, at *1 (9th Cir. Dec. 21, 2023) (rejecting claim that minor's agreement to online platform's terms of use was void *ab initio* without parental consent; "Roblox was not precluded from contracting with minor users" (citing Cal. Fam. Code § 6700)). That is exactly why the law allows minors to disaffirm their contracts. If parental consent were required, there would be no need for disaffirmance. While the TikTok TOS requires that minors obtain parental consent before *using* the TikTok service, consent is only required to *use* the service, not to *agree* to the TOS: "If you are under age 18, you may only use the Services with the consent of your parent or legal guardian." Nguyen Decl. Ex. G at 3.

**E.      Daughter Cannot Disaffirm the Current TOS and Enforce a Prior Version.**

Petitioner improperly seeks to use the law of "minor disaffirmance" as a sword rather than a shield by trying to enforce the defunct arbitration agreement from the 2019 TOS. To do so, she would also have to disaffirm the part of the 2019 TOS that gave TTI the right to "amend these Terms from time to time" and the part that required Daughter to stop using the app if she did not agree to the amended terms. 2019 TOS § 3 ("Changes to the Terms"). The law does not allow Daughter to disaffirm the TOS in this piecemeal fashion—she must disaffirm all terms between the parties that relate to her use of the TikTok service.

"[I]t is a longstanding and general rule of California law that a party cannot apply to his own use that part of the transaction which may bring to him a benefit, and repudiate the other, which may not be to his interest to fulfill." *C.M.D. ex rel. De Young v. Facebook, Inc.*, 621 F. App'x 488, 489 (9th Cir. 2015) (rejecting minor's attempt to disaffirm). "Accordingly, if a minor seeks to disaffirm a contract … equitable principles dictate that he or she 'must disaffirm the entire contract, not just the irksome portions.'" *I.B. ex rel. Fife v. Facebook, Inc.*, 2013 WL 6734239, at *4 (N.D. Cal. Dec. 20, 2013) (quoting *Holland v. Universal Underwriters Ins. Co.*, 270 Cal. App. 2d 417, 421 (1969)); *Yeh v. Tesla, Inc.*, 2023 WL 6795414, at *9 (N.D. Cal. Oct. 12, 2023) ("Under California law, '[t]he infancy defense may not be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit.'" (quoting *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 899 (S.D. Ill. 2012)); *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1036–37 (N.D. Cal. 2020) (same).

"The disability of infancy is not a sword rather than a shield." *R.A. v. Epic Games, Inc.*, 2019 WL 6792801, at *6 (C.D. Cal. July 30, 2019). "[A]fter disaffirmance a minor is not entitled to retain an advantage from a transaction which he repudiates." *Doe v. Coll. Bd.*, 440 F. Supp. 3d 349, 355 (S.D.N.Y. 2020). Thus, a

minor cannot resurrect a defunct version of an agreement simply by disaffirming subsequent amendments to that agreement because the deleted version has already been extinguished. That is especially true where, as here, the earlier agreement gave TTI the right to amend the contract and prohibited Daughter from ongoing use of the service absent agreement to the amended terms. 2019 TOS § 3 ("Changes to the Terms"). Petitioner cites no case in which a minor was allowed to disaffirm an amendment to a contract to enforce an earlier version of the contract.

That is because minor disaffirmance involves equitable considerations. To allow a minor to disaffirm a contract amendment for the purpose of enforcing a superseded version of the contract would allow the minor to use disaffirmance as a sword.

Petitioner cites cases that are readily distinguishable. Pet. Mem. at 18. In one case, which did *not* involve minor disaffirmance, the original contract was restored only because the agreement to modify it was found to be invalid from its formation, and thus the original contract was never extinguished. *Rejuso v. Brookdale Senior Living Cmtys., Inc.*, 2018 WL 6173384, at \*4 (C.D. Cal. Nov. 13, 2018). In the other case involving a minor attempting to disaffirm a contract, the minor was not trying to enforce an earlier version of the contract, and the court ultimately rejected the minor's attempt to use disaffirmance to place liability on the other party. *Scollan v. Gov't Emps. Ins. Co.*, 222 Cal. App. 2d 181, 183 (1963) (although "[d]isaffirmance of a contract by a minor … has the effect of a rescission," disaffirmance cannot be used as a sword to impose any obligation on the other party beyond restitution).

The present case is more like *Holland*, in which the minor plaintiff signed a motorist insurance contract and then signed a waiver to delete the standard provision providing coverage against uninsured motorists. 270 Cal. App. 2d at 421–22. After getting into an accident, the minor argued that he had the right to disaffirm his second agreement to the waiver and thus reinstate the original standard contract without the waiver he had agreed to delete. The court rejected this argument because it would be

inequitable to allow a minor to restore and enforce a contractual obligation he had previously agreed to delete: "It is one thing to say that he who affirmatively deals with a minor, does so at his peril … It is something else to announce that one who thinks he has not made a contract with a minor, may suddenly find that he has done so after all." *Id.*

That is exactly the situation here. It would be inequitable to allow Daughter to undo only part of her contract with TTI and to enforce the other part. If Daughter wants to disaffirm the TOS, she must disaffirm the entire TOS, including prior versions of it, "not just the irksome portions." *Holland*, 270 Cal. App. 2d at 421–22.

**F.     Daughter Has Not Disaffirmed the TikTok TOS Because She Continues to Manifest Assent to It and to Use TikTok.**

Petitioner cannot disaffirm a contract on Daughter's behalf where Daughter continues to assent to that contract and draw benefits from it. *C.M.D.*, 621 F. App'x at 489 (minor plaintiffs' continued use of Facebook "manifested an intention not to disaffirm the contract."); *R.A.*, 2019 WL 6792801, at *6 ("because Plaintiff continued to play Fortnite … he continued to enjoy the benefits of the agreement and therefore did not effectively disaffirm"). Here, Petitioner alleges that Daughter has repeatedly created multiple TikTok accounts, including after July 2023, and that Daughter "continues to use TikTok's platform" to this day. First Petition Case, ECF No. 35-3 ¶¶ 264, 282; Pet. ¶ 33. Because Daughter continues to use TikTok, she cannot disaffirm the TikTok TOS.

*            *            *

In short, the arguments made by Petitioner demonstrate a fundamental misunderstanding of contract law and of the right parties have to modify their agreements to eliminate arbitration obligations. Her arguments thus fail to demonstrate that TTI has any current obligation to arbitrate her claims.

## V.    THERE IS NO UNFAIRNESS IN DENYING THE PETITION.

There is no unfairness in denying the Petition because courts have long recognized that consumers are better off in court than in individual arbitration—so much so that courts at one time held consumer class action waivers to be "unconscionable" and unenforceable. *Discover Bank*, 36 Cal. 4th at 156–58.

At present, any TikTok user, including Petitioner, is free to bring valid claims they may have in court individually, or as a putative class action in appropriate cases. In fact, there are putative class actions already pending that assert *these same claims* on Petitioner's behalf. *See, e.g.*, *In re. Social Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-3047 (N.D. Cal.); *In re. TikTok Inc., In-App Browser Privacy Litig.*, No. 24-cv-2110 (N.D. Ill.).

Given that courts, consumer organizations, and class action plaintiffs have long desired that companies abandon their consumer arbitration agreements, the Court might wonder, understandably, why Petitioner seeks to resurrect a defunct arbitration agreement here. Indeed, the Petition makes no sense, unless viewed in the context in which it has been brought: a law firm hoping to capitalize on the inequities of the cost of mass arbitration was disappointed upon discovering the defendant no longer has an arbitration agreement. This effort is part of a business model that seeks to leverage the large fees imposed by mass arbitration in order to extort an unfair settlement:

> Recently, some plaintiff's lawyers have turned those arbitration agreements into a new vector of attack by pursuing mass arbitrations. Under this strategy, a firm threatens to file many thousands of copycat individual arbitration demands against a company in the names of claimants who are recruited online. *The goal is not actually to arbitrate the claims, but to inflict massive per-case arbitration fees on the targeted company.* If the fees are high enough, the company cannot afford to pay them in order to have an opportunity to defend itself. Instead, it is forced to succumb to a settlement, regardless of the merits of the claims.

Zachary David Miller, Kevin Scott Ranlett, & Rachel Ross Friedman, *Mass Arbitration Update: The Uncertain Path Ahead*, American Bar Association (May 28, 2024).[2]

As explained above, there was nothing improper in TTI choosing to avoid this *abuse* of arbitration by requiring users to agree to submit disputes to court if they wished to continue using the TikTok app. Contrary to the suggestion of Petitioner (Pet. ¶ 11), there is no "gamesmanship" here, and this case is nothing like the case relied on by Petitioner, *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062 (N.D. Cal. 2020). There, the court was displeased with DoorDash because it first sought to compel its couriers to go to arbitration, and then later tried to stay those arbitrations in favor of a class settlement. Moreover, DoorDash "[did] not dispute" that most of the claimants had valid arbitration agreements. *Id.* at 1065. For those that it did dispute, the court *refused* to compel arbitration. *Id.* at 1065–66.

Here, TTI *never* sought to compel Petitioner to arbitrate the present claims and only refused to arbitrate *after* Petitioner and Daughter agreed *not* to submit their disputes to arbitration. There is no good faith basis for any attempt to enforce the defunct 2019 arbitration agreement, and Petitioner will face no unfairness or prejudice from the denial of the Petition.

## **CONCLUSION**

For the foregoing reasons, the Petition should be denied.

Dated: July 2, 2025                    MAYER BROWN LLP

By: ___*/s/ Anthony J Weibell*___
Anthony J Weibell
AWeibell@mayerbrown.com

*Attorneys for Respondent*
TIKTOK INC.

---

[2] Available at https://www.americanbar.org/groups/business_law/resources/business-lawyer/2024-spring/mass-arbitration-update-the-uncertain-path-ahead/

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Respondent TikTok Inc. certifies that this brief contains 6,983 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 2, 2025                    MAYER BROWN LLP

By:    */s/ Anthony J Weibell*
              Anthony J Weibell
              AWeibell@mayerbrown.com

*Attorneys for Respondent*
TIKTOK INC.