UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 25-1216 JGB (SPx)** | Date | September 11, 2025 |
| Title | ***Brittany Edwards v. TikTok, Inc.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):          Attorney(s) Present for Defendant(s):

None Present                    None Present

**Proceedings:     Order (1) GRANTING Petitioner's Petition to Compel Arbitration (Dkt. No. 1); and (4) VACATING the September 15, 2025 Hearing (IN CHAMBERS)**

Before the Court is Petitioner Brittany Edwards', on behalf of D.B. Barlow, Petition to Compel Arbitration.  ("Petition," Dkt. No. 1.)  The Court finds this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Petition, the Court **GRANTS** the Petition to Compel Arbitration, and **VACATES** the September 15, 2025 hearing.

## I.   BACKGROUND

### A.  Procedural Background

On May 19, 2025, petitioner Brittany Edwards', on behalf of D.B. Barlow, ("Petitioner") filed a petition to compel arbitration against respondent TikTok, Inc. ("TTI" or "Respondent").  On July 02, 2025, TTI filed a response.  ("Response," Dkt. No. 42.)  Petitioner filed a reply on August 06, 2025.  ("Reply," Dkt. No. 43.)

### B.  Relevant Factual Background

In 2019, Petitioner's daughter, who was eight years old at the time, downloaded the application TikTok without her mother's knowledge or consent.  (Pet. ¶ 30.)  Petitioner allowed her daughter to continue using TikTok believing the application "was a safe and silly platform."

(Id. ¶¶ 1, 31.)  At the time Petitioner's daughter downloaded the app TikTok, any individual who signed up to use TikTok agreed to and accepted the TikTok Terms of Service.  (Id. ¶ 4.)  The Terms of Service operative in 2019 ("2019 TOS") contain in section 1 an "arbitration notice" in all capitals: "THESE TERMS CONTAIN AN ARBITRATION CLAUSE AND A WAIVER OF RIGHTS TO BRING A CLASS ACTION AGAINST US."  (Declaration of Kyle W. Roche "Roche Decl.", Dkt. No. 1-2, Ex. 1 at 2.) The "Arbitration and Class Action Waiver" is located in section 11 of the 2019 TOS and states in relevant part:

> This Section includes an arbitration agreement and an agreement that all claims will be brought only in an individual capacity (and not as a class action or other representative proceeding). . . . After the informal dispute resolution process any remaining dispute, controversy, or claim (collectively, "Claim") relating in any way to your use of TikTok's services and/or products, including the Services, or relating in any way to the communications between you and TikTok or any other user of the Services, will be finally resolved by binding arbitration. This mandatory arbitration agreement applies equally to you and TikTok. . . . You agree that the U.S. Federal Arbitration Act governs the interpretation and enforcement of this provision, and that you and TikTok are each waiving the right to a trial by jury or to participate in a class action. This arbitration provision will survive any termination of these terms. . . . The arbitration will be administered by the American Arbitration Association (AAA) under its rules. . . .The arbitrator, and not any federal, state, or local court, will have exclusive authority to resolve any dispute relating to the interpretation, applicability, unconscionability, arbitrability, enforceability, or formation of this arbitration agreement, including any claim that all or any part of this arbitration agreement is void or voidable.

(Id., Ex. 1 at 29-31.)  The 2019 TOS remained in force until July 31, 2023 when TTI required users to agree to new terms of service ("2023 TOS") prior to using TikTok.  (Response, at 7-8.)  Section 11 of the 2023 TOS provides an integration clause that states: "These Terms constitute the whole legal agreement between you and TikTok and govern your use of the Services and completely replace any prior agreements between you and TikTok in relation to the Services." (Roche Decl., Ex. 2 at 23.)  Instead of a mandatory arbitration clause, the 2023 TOS specify that:

> These Terms and any claims, causes of action, of any kind or character, or demand arising out of or relating to the Terms will be governed by the laws of the State of California. Any claim, cause of action or dispute, arising out of or relating to these Terms shall also be resolved exclusively in the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim.

(Id., Ex. 2 at 14.)  On top of this exclusive venue provision, the 2023 TOS also require that any litigation be brought within one year "of the occurrence of the event or facts giving rise to a dispute that is arising out of or related to these terms."  (Id., Ex. 2 at 8.)

---

**CIVIL MINUTES—GENERAL**                Initials of Deputy Clerk MG

Petitioner grew concerned about her daughter's use of TikTok as her daughter became depressed and suicidal after starting to use TikTok. (Pet. ¶¶ 32-35.) Although Petitioner instructed her daughter repeatedly to delete her accounts and the TikTok application, Petitioner's daughter created and used multiple accounts. (Id. ¶ 36.) In 2023, Petitioner's daughter, now age 12, likely agreed to the 2023 TOS when TTI required users to agree to them before continuing to use the application. (Id. ¶ 39.) Although the 2023 TOS requires parental consent to use the application, Petitioner was not aware of and would not have agreed to the 2023 TOS. (Id. ¶¶ 42-46.) Specifically, she would not have agreed to the new requirement to publicly litigate any claims instead of proceeding through arbitration or to the one-year limitation to bring any claims. (Id. ¶¶ 44-45.)

In December 2023, Petitioner's counsel notified TTI that they intended to arbitrate claims on behalf of TikTok account holders for claims arising before the 2023 TOS entered into effect. (Id. ¶ 48.) On March 29, 2024, Petitioner filed a demand against TTI with the American Arbitration Association (AAA) pursuant to the 2019 TOS. (Id. ¶ 50.) On June 2, 2024, the AAA directed TikTok to pay the $625 filing fee by June 17, 2024. (Id. ¶ 55.) TTI has not paid the filing fee and has not participated materially in the arbitration. (Id. ¶ 56.) As a result, Petitioner advanced the filing fees TTI owes to the AAA. (Id.)

On September 24, 2024, Petitioner filed a class action petition to compel arbitration. Brittany Edwards v. TikTok, Inc., No. EDCV 24-2039 JGB (SPX), (C.D. Cal. Sept. 24, 2024). This Court denied class certification and denied Petitioner's individual petition without prejudice. Edwards v. TikTok, Inc., No. EDCV 24-2039 JGB (SPX), 2025 WL 1090316, at *4 (C.D. Cal. Mar. 18, 2025).

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a general policy favoring arbitration agreements. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011); Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) ("Section 2 of the FAA creates a policy favoring enforcement of agreements to arbitrate."). Its principal purpose is to "ensure that private arbitration agreements are enforced according to their terms." Concepcion, 563 U.S. at 334 (citing Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ., 489 U.S. 468 (1989) (internal quotation marks omitted)). "Arbitration is a matter of contract, and the [FAA] requires courts to honor parties' expectations." Id. at 351.

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such an arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. Id. If such a showing is made, the district court shall also stay the proceedings pending resolution

of the arbitration at the request of one of the parties bound to arbitrate.  Id. § 3.  On a motion to compel arbitration, a district court's involvement is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  Cox, 533 F.3d at 1119 (quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)).  A party seeking to compel arbitration under the FAA bears the burden of making this showing.  Id.  A determination on arbitrability is made "on the basis of the contract entered into by the parties."  Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 241 (1962).

## III.  DISCUSSION

### A.  The Arbitration Agreement

In deciding a motion to compel arbitration, a district court determines "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  Cox, 533 F.3d at 1119 (internal citations omitted).

The Court finds that a valid agreement to arbitrate exists.  Petitioner argues that the arbitration agreement in the 2019 TOS applies to claims arising prior to the entry into force of the 2023 TOS.  (Memorandum of Law in Support of Petition to Compel Arbitration "Memorandum", Dkt. No. 1-9, at 9-11.)  Defendant argues that the 2023 TOS, and its integration clause, replaced the 2019 TOS, including the arbitration agreement, such that the exclusive venue provision governs all claims.  (Mem., at 5-9.)  The dispositive legal issue here is whether the 2019 arbitration agreement, which includes a survivability clause, trumps the 2023 TOS exclusive venue provision as to claims arising prior to July 31, 2023 when the 2023 TOS entered into effect?  The Court finds that it does.

The parties do not dispute that Petitioner was a party to the 2019 TOS, which contains the arbitration agreement.  (See Mem. at 7; Response at 2.)  They dispute whether the 2019 TOS arbitration agreement controls claims that arose prior to the 2023 TOS, or whether the 2023 TOS applies retroactively.  (See Mem. at 7, Response at 3.)  The arbitration agreement's survivability clause provides that it will "survive any termination of these terms."  (Roche Decl., Ex. 1, at 30.)  Yet, the integration clause of the 2023 TOS states: "These Terms constitute the whole legal agreement between you and TikTok and govern your use of the Services and completely replace any prior agreements between you and TikTok in relation to the Services."  (Roche Decl., Ex. 2 at 23.)  The Court finds that, notwithstanding the integration clause, the arbitration agreement governs claims arising prior to 2023.  While the 2023 TOS replaces "any prior agreements," it does not apply retroactively to claims that accrued prior to its entering effect.

As a preliminary matter, the arbitration agreement should be considered "broad."  The arbitration agreement covers claims "relating in any way to your use of TikTok's services and/or products, including the Services, or relating in any way to the communications between you and TikTok or any other user of the Services."  (Id., Ex. 2 at 29-30.)  Arbitration clauses with the language "relating to" are considered "broad," and this clause stretches that language even

---

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk MG

further by employing the phrase "relating in any way to."  See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967).  Arbitration clauses, and especially "broad" arbitration clauses, give rise to a "presumption of arbitrability."  See AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986); see also Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 742 (9th Cir. 2014) ("The presumption in favor of arbitrability applies only where the scope of the agreement is ambiguous as to the dispute at hand.").  Thus, the Court finds that under this broad arbitration agreement there exists a presumption of arbitrability.

This presumption is further bolstered by the principle that an arbitration clause "will survive even where the prior agreement itself is rescinded by the latter agreement" unless the subsequent agreement contains a "clear and specific waiver" of the arbitration clause. Homestake Lead Co. of Missouri v. Doe Run Res. Corp., 282 F. Supp. 2d 1131, 1142 (N.D. Cal. 2003) (internal citations omitted).  The Court finds that the 2023 TOS did not contain such a "clear and specific waiver."  Nowhere does the 2023 TOS indicate that it repeals the 2019 arbitration clause; nor does TTI argue that the 2023 TOS contains such a waiver.  On the contrary, the survivability clause demonstrates that the parties intended the arbitration agreement to outlive the termination of the 2019 TOS.  See Crooks v. Wells Fargo Bank, N.A., 312 F. Supp. 3d 932, 938 (S.D. Cal. 2018).

TTI argues that the governing Ninth Circuit case law holds that the exclusive venue provision supersedes the arbitration agreement. (Response at 5.)  However, the cases TTI points to are inapposite and, therefore, distinguishable.  TTI first references Suski v. Coinbase where the Ninth Circuit held that a forum selection clause in a later contract superseded the arbitration agreement in an earlier agreement.  55 F.4th 1227, 1231 (9th Cir. 2021).  Suski is distinguishable on three grounds.  First, the instant case deals with claims that arose prior to the 2023 TOS. Suski does not analyze whether the claims arose before the parties' entered into the later agreement.  Second, the Ninth Circuit found that the two agreements were irreconcilable.  Id. However, the 2019 TOS and the 2023 TOS are reconcilable in so far as the 2019 TOS and its arbitration agreement apply to claims that arise prior to the 2023 TOS.  Third, the Ninth Circuit does not indicate that the arbitration clause at issue in Suski contained a survivability clause.  The 2019 TOS do contain a survivability clause, which must influence the Court's analysis of the arbitration agreement.

Goldman, Sachs & Co. v. City of Reno is similarly distinguishable.  747 F.3d 733 (9th Cir. 2014).  The Ninth Circuit held that forum selection clauses requiring that "all actions and proceedings" be brought in the District of Nevada superseded a previous "default obligation" requiring arbitration when a customer of Goldman Sachs, such as the City of Reno, requests it. Id. at 747.  "As a threshold matter, we agree . . . that a contract between the parties can supersede the default obligation to arbitrate."  Id. at 741.  Here, the 2019 TOS is not analogous to a "default obligation" as it constitutes a contract formed by both parties.  The 2019 TOS specifically stipulated that the arbitration clause would "survive any termination" of the 2019 TOS.  (Roche Decl., Ex. 1, at 30.)  As a result, TTI was not "free to make alternative arrangements . . . when the parties formed or modified their contractual relationship."  Goldman, Sachs & Co., 747 F.3d at 741.  Furthermore, Goldman, like Suki, also deals with claims that arose after the forum

selection clause governed.  Id. at 743.  ("Goldman and Reno agreed *not* to arbitrate any claims that might arise out of their contractual relationship at the very time this relationship was formed.).  Here, the claims arose while the 2019 TOS governed and before the 2023 TOS entered into force.

In addition to Ninth Circuit case law, Respondent cites to Applied Energetics, Inc. v. NewOak Cap Mkts. from the Second Circuit to further bolster their proposition that parties can revoke an earlier agreement (i.e. an arbitration clause) with a later agreement (i.e., the exclusive venue provision).  645 F.3d 522 (2d. Cir. 2011.)  In Applied Energetics, Inc. the Second Circuit held that a later agreement's forum selection clause "superseded" an earlier agreement's mandatory arbitration clause.  Id. at 526.  The court based its decision in large part on the later agreement's merger clause given that "[b]oth provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other."[1]  Id. at 525-26.  However, unlike Applied Energetics, Inc. where the earlier agreement specifically contemplated that it would later be replaced by a more final agreement, TTI designed the arbitration agreement in the 2019 TOS to survive the termination of the 2019 TOS.  See id. at 523-24.  Here, the earlier arbitration clause contained a survivability clause.  Additionally, although the claims in Applied Energetics, Inc. both pre- and post-date the later agreement, all the claims here accrued prior to the 2023 TOS. See id. at 524.

Next, Respondent cites to state and federal cases to support the proposition that a later agreement's forum selection clause binds even when the claims arose prior to the formation of the agreement.  (Response at 6.)  Yet, none of those cases dealt with a situation where two opposing contracts exist.  In Salgado v. Carrows Restaurants, Inc., an employee sued her employers and subsequently signed an arbitration agreement with her employers, on which basis the employers filed a motion to compel arbitration.  33 Cal. App. 5th 356, 359 (Cal. Ct. App. 2019), as modified (Mar. 25, 2019).  The California Court of Appeals, Second District, ruled that arbitration provisions can apply retroactively "to transactions which occurred prior to execution of the arbitration agreement."  Id. at 361 (citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. King, 804 F.Supp. 1512, 1514 (M.D. Fla. 1992)).  Similarly, in Franco v. Greystone Ridge Condo., an employee, the plaintiff, filed a complaint against his employer and subsequently signed an arbitration agreement with his employer.  39 Cal. App. 5th 221, 225 (Cal. Ct. App. 2019).  That arbitration agreement specifically covered "all claims . . . relating to any aspect of Employee's employment with Employer (pre-hire through post-termination)" on which basis the employer filed a motion to compel arbitration.  Id. at 224-26.  The California Court of Appeals, Fourth District, held that the arbitration agreement's application to "pre-hire" claims "contains an express reference that the Agreement applies to claims existing before it was executed."  Id. at 232.  Both cases are distinguishable because the 2023 TOS does not contain any express language that would extend its reach to claims that accrued before it entered effect or that would annul the survivability clause of the 2019 TOS.  Nor does either case deal with a situation where the parties contend that two contracts oppose one another as to the issue of arbitration.  Although

---

[1] The opinion also relied on New York state law, which does not apply to this case.  See Applied Energetics, Inc. v. NewOak Cap Mkts., 645 F.3d 522, 526 (2d. Cir. 2011.)

Respondent additionally cites to <u>Pambakian v. Blatt</u>, that Ninth Circuit case fails to persuade because it relies exclusively on <u>Franco</u>. <u>Pambakian v. Blatt</u> as the factual background of the two cases are highly similar. 859 F. App'x 808, 809 (9th Cir. 2021).[2] As discussed above, <u>Franco</u> is inapposite and, therefore, so is <u>Pambakian</u>.

The last case Respondent cites to is <u>Heinz v. TikTok</u>. No. 24STCP01227, 2024 WL 5418632, at *1 (Cal. Super. Ct. Oct. 02, 2024). This case in California Superior Court deals with a nearly identical situation as the instant case. The petitioner in <u>Heinz</u> attempted to compel TTI to arbitrate on the basis of the 2019 TOS. <u>Id.</u> The court held that the 2019 TOS "do not control this dispute and there is no basis to find the July 2023 Terms of Service cannot apply retroactively." <u>Id.</u> at *3. This Court does not find that holding persuasive as the superior court judge relied exclusively on <u>Salgado</u> for its holding, which this Court distinguished above. Nor did the superior court judge discuss the impact of the survivability clause on the validity of the forum selection clause.

Because Petitioner brings claims that accrued prior to the entering into effect of the 2023 TOS, and because the 2019 TOS arbitration agreement contained a survivability clause, the Court finds that the arbitration agreement controls Petitioner's claims. Although TTI argues that such a holding would make it "impossible for parties to ever amend or modify an agreement," this holding is temporally limited to claims that arise prior to the 2023 TOS. Furthermore, TTI could have designed the 2023 TOS to supersede the survivability clause of the 2019 TOS with a "clear and specific waiver." <u>Homestake Lead Co. of Missouri</u>, 282 F. Supp. 2d at 1142. Although TTI provided users with a pop-up and a banner (Memorandum at 2-3), these notices did not make clear that the 2023 TOS would supersede the survivability clause of the 2019 TOS. As a result, enforcing the forum selection clause of the 2023 TOS "with respect to conduct that allegedly occurred before [its] effective date . . . would construe [it] far more broadly than its plain language permits." <u>Lambert v. Tech. Res. Sols., Inc.</u>, No. LACV181114VAPRAOX, 2018 WL 5919211, at *5 (C.D. Cal. Aug. 22, 2018).

As the Court hold that the 2019 arbitration clause applies to Petitioner's claims, the Court need not decide whether a retroactive application of the 2023 TOS would violate the implied covenant of good faith and fair dealing or render the 2023 TOS unconscionable. (Memorandum at 13-14.) The Court also need not decide whether Petitioner's daughter disaffirms the 2023 TOS. (<u>Id.</u> at 18.)

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's Petition to Compel Arbitration (Dkt. No. 46) and **VACATES** the September 15, 2025 hearing. The Court **COMPELS** Respondent to arbitration and **STAYS** the case pending the outcome of any arbitration proceedings. The parties shall jointly notify the Court within seven days of the

---

[2] <u>Pambakian v. Blatt</u> is also unpersuasive because the decision is unpublished. <u>See</u> U.S. Ct. of App. 9th Circ. Rule 36-3(a).

conclusion of arbitration, and shall request that the Court dismiss this matter or take other action consistent with the resolution of the arbitration.  The Clerk is **DIRECTED** to administratively close the case.

      **IT IS SO ORDERED.**